13 CIV 553

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| MICHAEL WILKS, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) Civil Action No. ) |
| v. | ) **JURY TRIAL DEMANDED** ) |
| WILLIAM W. PRIEST, ENRIQUE R. ARZAC, JEFFREY L. BERENSON, JOHN L. CECIL, PETER A. FLAHERTY, TIMOTHY T. TAUSSIG, THE TORONTO-DOMINION BANK, EMPIRE MERGER SUB, INC., and, EPOCH HOLDING CORPORATION | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

---

### CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Michael Wilks ("Wilks"), by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

1. Plaintiff brings this class action on behalf of the public stockholders of Epoch Holding Corporation ("Epoch" or the "Company") against Epoch's Board of Directors (the "Board" or the "Individual Defendants") for their breaches of fiduciary duties arising out of their attempt to sell the Company to The Toronto-Dominion Bank ("TD") by means of an unfair process and for an unfair price and against TD and its affiliates for aiding and abetting the Board's breaches of fiduciary duty. Plaintiff also brings this action individually against Epoch's Board for their violations of Section 14(a)

of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 14a-9 promulgated thereunder ("Rule 14a-9").

2.      Epoch is an investment manager that primarily provides its services to a global institutional client base, including corporations, public funds, foundations, and endowments. It also caters to high net worth individuals, investment companies, state or municipal government entities, pension and profit sharing plans, and other charitable organizations.

3.      On December 6, 2012, TD and the Company announced a definitive agreement under which TD, through its wholly owned subsidiary, Empire Merger Sub, Inc. ("Merger Sub"), will acquire all of the outstanding shares of Epoch for $28.00 per share in cash (the "Proposed Transaction"). The Proposed Transaction is valued at approximately $668 million.

4.      The Board has breached its fiduciary duties by agreeing to the Proposed Transaction for grossly inadequate consideration. As described in more detail below, given Epoch's recent strong performance as well as its future growth prospects, the consideration shareholders will receive is inadequate and undervalues the Company.

5.      The Proposed Transaction was approved by a majority interested Board, which favored a transaction with TD in order to obtain lucrative post-employment positions with the merged company and secure millions of dollars of windfall financial benefits from the automatic vesting of unvested restricted stock that they currently hold.

6.      Despite knowing that TD had guaranteed defendant William W. Priest ("Priest"), the Company's Chief Executive Officer, and defendant Timothy T. Taussig

("Taussig"), Epoch's Chief Operating Officer, as well as other executive management, lucrative and prestigious employment positions with the new company weeks before the material terms of a merger agreement were finalized, the Board allowed Priest and Taussig to run the process and negotiations with TD, ultimately hatching out a deal with TD highly favorable to them.  Priest and Taussig, of course, pursued their own interests ahead of the interests of the Company's public stockholders to whom they owed a duty to obtain the best possible price.

7.     Indeed, Priest and his conflicted management team began employment discussions well before the material terms of the merger were even agreed upon and, in particular, before TD even put a price on the table.  Even though TD had not given the Board any indication of the price it would offer to acquire Epoch until late November 2012, Priest and Taussig convinced the Board to focus exclusively on a transaction with TD in order to guarantee their future employment.

8.     The Board also authorized management to retain Credit Suisse Securities LLC ("Credit Suisse") as the Company's financial advisor in a transaction with TD, despite the fact that certain executive officers of Epoch were previously employees of Credit Suisse's asset management division and that Credit Suisse had business dealings with TD.

9.     After rushing into a deal with TD, the Board then inexplicably agreed to a strict no-solicitation provision that prevents the Company from soliciting other potential acquirers or even in continuing discussions and negotiations with potential acquirers.

This is particularly troubling in light of the Board's failure to contact even one other potential interested party to shop the Company to potentially interested bidders.

10.     As a result of the Board's failure to engage in any semblance of a sales process, it failed to get a fair price for the Company.  Indeed, at least one Wall Street analyst had a price target of $33.50 per share before the Proposed Transaction was announced.  Even the financial analysis performed by the Company's financial advisor, Credit Suisse, demonstrate how inadequate the merger consideration is and supports a price for Epoch as high as $32.88 per share.

11.     Given Epoch's recent strong performance as well as its future growth prospects, the consideration shareholders will receive is unfair, inadequate and undervalues the Company.

12.     In addition, on January 15, 2013, the Company filed a Preliminary Proxy Statement (the "Proxy") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction. The Proxy fails to provide the Company's shareholders with material information and/or provides them with materially misleading information thereby rendering the shareholders unable to make an informed decision on how to vote at the special stockholder meeting. Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder, by omitting material facts necessary to render the Proxy non-misleading.

13.     The Individual Defendants have breached their fiduciary duties of loyalty and due care and violated the federal securities laws, and TD and Merger Sub have aided

and abetted such breaches by Epoch's officers and directors. Plaintiff seeks to enjoin the Proposed Transaction unless and/or until defendants cure their breaches of fiduciary duty.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), as this Complaint alleges violations of Section 14(a) of the Exchange Act and Rule 14a-9. This court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

15.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000 exclusive of interests and costs.

16.     This action is not a collusive one to confer jurisdiction on a court of the United States, which it would otherwise not have.

17.     Venue is proper in this district because Defendant Epoch maintains its principal executive offices in the district and the defendants have conducted business and engaged in numerous activities, which have had an effect on this district.

## PARTIES

18.     Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Epoch.  Plaintiff is a citizen of California.

19.     Epoch is a corporation organized and existing under the laws of the State of Delaware. It maintains its principal executive offices at 640 Fifth Avenue New York, New York 10019.

20.     Defendant Priest has been the Chief Executive Officer and a director of the Company since the Company's inception in June 2004.  In connection with his employment agreement if the Proposed Transaction closes, Priest will have an annual base salary of $600,000 and will be eligible to participate in Epoch's Annual Incentive Plan for Epoch's first three fiscal years following the consummation of the merger. The employment agreement also provides that Priest will be entitled to receive a transition award upon the consummation of the merger, which will be an amount equal to 1.5 times the sum of Priest's 2012 salary and 2012 annual incentive.  Priest signed the materially misleading Proxy and, upon information and belief, participated in the preparation of the Proxy.  Upon information and belief, Priest is a citizen of New York.

21.     Defendant Allan R. Tessler ("Tessler") has been Chairman of the Board and a director of the Company since the Company's inception in June 2004.  Upon information and belief, Tessler reviewed and/or participated in the preparation of the Proxy.  Upon information and belief, Tessler is a citizen of New York.

22.     Defendant Enrique R. Arzac ("Arzac") has been a director of the Company since August 2006.  Upon information and belief, Arzac reviewed and/or participated in the preparation of the Proxy.  Upon information and belief, Arzac is a citizen of New York.

23.     Defendant Jeffrey L. Berenson ("Berenson") has been a director of the Company since June 2004.  Upon information and belief, Berenson reviewed and/or participated in the preparation of the Proxy.  Upon information and belief, Berenson is a citizen of New York.

24.    Defendant John L. Cecil ("Cecil") has been a director of the Company since December 2009.  Upon information and belief, Cecil reviewed and/or participated in the preparation of the Proxy.  Upon information and belief, Cecil is a citizen of New York.

25.    Defendant Peter A. Flaherty ("Flaherty") has been a director of the Company since July 2004.  Upon information and belief, Flaherty reviewed and/or participated in the preparation of the Proxy.  Upon information and belief, Flaherty is a citizen of New York.

26.    Defendant Timothy T. Taussig has been a director of the Company since December 2009 and President and Chief Operating Officer of the Company since its inception in June 2004.  Upon consummation of the Proposed Transaction, Taussig will receive an annual base salary of $450,000 and will be entitled to participate in the Annual Incentive Plan during the first three fiscal years following the consummation of the merger.  His employment letter agreements also provides that Taussig will be entitled to receive a transition award upon the consummation of the merger, which will be an amount equal to 1.5 times the sum of his 2012 salary and 2012 annual incentive.  Upon information and belief, Taussig reviewed and/or participated in the preparation of the Proxy.  Upon information and belief, Taussig is a citizen of New York.

27.    Defendants referenced in ¶¶ 20 through 26 are collectively referred to as Individual Defendants and/or the Board.

28.    Defendant TD is a Canadian corporation with its headquarters located at 66 Wellington St., 4th Floor, TD Bank Tower Toronto, Ontario A6 M5K 1A1. TD offers

a full range of financial products and services to approximately 22 million customers worldwide through its Canadian Personal and Commercial Banking, Wealth and Insurance, Wholesale Banking, and U.S. Personal and Commercial Banking divisions.

29.     Defendant Merger Sub is a Delaware corporation wholly owned by TD that was created for the purposes of effectuating the Proposed Transaction.

## CLASS ACTION ALLEGATIONS

30.     Plaintiff brings his state law claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty as class action claims pursuant to FEDERAL RULE OF CIVIL PROCEDURE 23(a) on behalf of owners of Epoch common stock as of December 6, 2012, the announcement of the Proposed Transaction (the "Class"). Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

31.     The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. According to the Merger Agreement, as of December 6, 2012, 23,719,231 shares of common stock were represented by the Company as outstanding. All members of the Class may be identified from records maintained by Epoch or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

32.     Questions of law and fact are common to the Class, including, *inter alia*, the following:

(i)      Whether the Individual Defendants breached their fiduciary duties of undivided loyalty or due care with respect to Plaintiff and the other members of the Class in connection with the Proposed Transaction;

(ii)     Whether the Individual Defendants breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Transaction;

(iii)    Whether the Individual Defendants misrepresented and omitted material facts in violation of their fiduciary duties owed by them to Plaintiff and the other members of the Class;

(iv)     Whether TD and Merger Sub aided and abetted the Individual Defendants' breaches of fiduciary duty; and

(v)      Whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

33.     Plaintiff's claims are typical of the claims of the other members of the Class.  Plaintiff and the other members of the Class have sustained damages as a result of Defendants' wrongful conduct as alleged herein.

34.     Plaintiff is committed to prosecuting this action, will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

35.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

36.     Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

37.     Defendants have acted on grounds generally applicable to the class, making appropriate final injunctive relief with respect to the Class as a whole.

## FURTHER SUBSTANTIVE ALLEGATIONS

### *Company Background and its Poise for Growth*

38.     Epoch is an investment manager that primarily provides its services to a global institutional client base, including corporations, public funds, foundations, and endowments. It also caters to high net worth individuals, investment companies, state or municipal government entities, pension and profit sharing plans, and other charitable organizations.

39.    Like many firms, Epoch suffered in the 2008 worldwide economic recession, experiencing a decline in business and the value of its stock. However, the Company quickly turned its fortunes around, experiencing steady growth since 2009.

40.    The Company's impressive recovery over the past several years is demonstrated by the information disclosed in its most recent Form 10-K (the 10-K"), filed with the SEC on September 10, 2012 (the "2012 10-K").  The 2012 10-K showed the Company's consistent growth across various financial metrics, with its annual net income rising from $5.86 million for the 12-month period ended on June 30, 2009 to $24.77 million for the 12-month period ended June 30, 2012, and total operating revenues increasing from $31.18 million to $92.38 million for the same period.  Furthermore, the Company's operating margins have increased from 11% to 46% over this same period.

41.    Additionally, since January 2010, the Company has announced four increases in quarterly dividends, as well as twelve substantial increases in the assets the Company has under management.

42.    Such consistent growth has resulted in positive analyst support for Epoch and the Company's stock value, with the Company being featured in an August 24, 2012 *seekingalpha.com* article entitled "3 Profit Generating Financial Stocks Set For Expansion."

43.    Most recently, on November 5, 2012 the Company reported its financial results for its first quarter of fiscal 2013, in which it announced earnings per share of $0.33.  This figure surpassed analyst expectations of $0.28 per share, and was 73%

greater than the $0.19 per share the Company had reported for the first quarter of fiscal 2012.

### The Board Breached its Fiduciary Duties by Failing to Conduct Any Sales Process or Allow for a Go-Shop to Obtain a Fair Price for Epoch's Public Shareholders

44.     According to the Proxy, TD representatives and defendants Priest and Taussig began discussions about potential business opportunities between the two companies, including an acquisition of Epoch by TD, in early 2011.   The Board authorized Priest and Taussig to lead such discussions over the course of more than a year during which Epoch retained Credit Suisse as its financial advisor in a proposed transaction.

45.     Discussions between TD and Epoch appear to have changed course to focus solely on a TD acquisition of Epoch in November 2011, although the Proxy does not disclose why the Board abandoned other possible alternatives so early in the process. Nor does the Proxy provide other than a cursory discussion of the events and discussions that occurred between TD and Epoch over the course of more than a year.

46.     In April 2012, TD and Epoch terminated their discussions purportedly because "an agreement on price and other key transaction terms could not be reached." The Proxy, however, does not disclose any details regarding the discussions that occurred, including what offers and counteroffers on price were made between the parties to provide shareholders with any basis to assess the negotiation process between TD and Epoch.

47.     After discussions between TD and Epoch broke down in April 2012, the Board did not even consider contacting other parties to gauge interest in an acquisition or strategic transaction to reasonably inform itself of the Company's market value.  Instead, rather than focus its discussions on shareholders' interests, the Board discussed "issues of key personnel risk," noting that the Company's "financial performance and its ability to maintain and attract clients is heavily dependent on the continued services of key personnel at various levels throughout the firm . . ."

48.     Unsurprisingly, after this discussion on the interests of management, the Company resumed negotiations with TD—a company it knew would provide for the continued employment of the Company's management.

49.     Indeed, during the summer and fall of 2012, TD and Epoch met again on several occasions to continue their dialogue about a strategic transaction.  The Proxy is silent as to why or how these discussions resumed.  What is clear is that the supine Board allowed defendants Priest and Taussig to continue to run the show and drive the process towards a deal with TD, their preferred acquiror.  According to the Proxy, during Epoch's fall discussions with TD, "Mr. Priest kept the non-management directors apprised of such meetings" he was having with TD, although no Board members were present during the meetings.

50.     In late October 2012, the parties re-opened discussions regarding a possible TD acquisition of Epoch.  On November 1, 2021, TD sent Epoch a proposal outlining certain material terms for a potential business combination, including a condition that TD would require Epoch's senior management to continue to run the

merged company.  Notably, a proposed acquisition price was not included in these material, terms according to the Proxy.  Thus, even though the Board had no inkling whether TD would offer a fair price that maximized shareholder value and despite obvious conflicts, the Board continued to allow Priest and Taussig to negotiate exclusively with TD and did not contact even one other interested party.

51.     Additionally rather than select an unbiased financial advisor who could properly act in shareholders' best interest to obtain the best price, the Board selected Credit Suisse—a company with a business relationship with TD and that had employed several members of the Company's management.

52.     The Board finally discussed the possibility of conducting a private or public auction in November 2012 and also considered a range of potential suitors. Without speaking to a single interested party, the Board determined not to conduct even a private auction because it purportedly would "pose significant risks to its existing operations".

53.     Throughout the next month, the Board focused solely on reaching a deal with TD, which had promised lucrative post-deal employment positions to defendants Priest and Taussig, rather than obtaining the best possible deal for shareholders.

54.     The Board then locked up deal by agreeing to a strict "no shop" provision that prohibits the Board from taking any meaningful action to ensure that they are in compliance with their fiduciary duties, including solicitation of alternative acquisition proposals or business combinations.  Specifically, § 7.2 of the Merger Agreement includes a "no solicitation" provision barring the Company from soliciting interest from

other potential acquirers in order to procure a price in excess of the amount offered by TD. Section 7.2 demands that the Company terminate any and all prior or on-going discussions with other potential acquirers.

55.     Further, in connection with the Proposed Transaction, certain of Epoch's directors and officers have entered into voting agreements where 28% of Epoch's common stock is already "locked up" in favor of the Proposed Transaction with TD. The voting agreements operate as a deterrent to other potential purchasers.

56.     Ultimately, these preclusive deal protection provisions illegally restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.

57.     Therefore, rather than seek a transaction that reflected the Company's true intrinsic value, the Board opted to eschew the interests of shareholders and focus solely on satisfying the interests of management by entering into the unfair Proposed Transaction with TD.

***Despite Epoch's Solid Financial Performance and Continued Growth and Without Conducting Any Process to Reasonably Inform Itself of Epoch's True Market Value, the Board Agreed to Sell the Company on the Cheap***

58.     In a press release dated December 6, 2012, the Company announced that it had entered into a merger agreement with TD pursuant to which TD, through Merger Sub, will acquire all of the outstanding shares of the Company for $28.00 per share. The Proposed Transaction is valued at approximately $668 million.

59.     Given the Company's recent strong performance and success, the Proposed Transaction consideration is inadequate and significantly undervalues the

Company. TD is seeking to acquire the Company at the most opportune time, at a time when the Company is performing very well and is positioned for tremendous growth.

60.     Further, according to Yahoo Finance, at least one Wall Street analyst had a price target of $33.50 per share before the Proposed Transaction was announced.

61.     Additionally, even the financial analysis performed by the Company's financial advisor, Credit Suisse Securities LLC ("Credit Suisse"), demonstrate how inadequate the merger consideration is and supports a higher price for Epoch. For example, Credit Suisse's *Selected Transactions Analysis* resulted in an implied valuation reference range with a high-end of $31.75 per share of Epoch common stock, while its *Discounted Cash Flow Analysis* resulted in an implied valuation reference range with a high-end of $32.88 per share of Epoch common stock.

62.     In addition, the Proposed Transaction consideration fails to adequately compensate Epoch's shareholders for the significant synergies created by the merger. The Proposed Transaction is a strategic merger for TD: Epoch's assets and management team will substantially strengthen TD's equities sector. As stated by Brian Murdock, Chairman and Chief Executive Officer of TD Asset Management: "The combination of our two firms, which share compatible cultures and complementary investment disciplines, will help us better serve clients on both sides of the border. Epoch will enable TD Asset Management to substantially broaden our expertise in U.S. and global equities."

63.     Despite the significant synergies inherent in the transaction for TD, however, the Board failed to secure a fair price for the Company, either for the intrinsic value of its assets or the value of the Company's assets to TD.

***Epoch's Officers and Directors are Obtaining Special Benefits for Themselves Not Being Shared Equally by the Company's Shareholders***

64.     Rather than negotiate a transaction that was in the best interests of Epoch's shareholders, the Company's executive officers and directors were acting to better their own personal interests through the Proposed Transaction.

65.     Members of the Company's management, including Priest will retain their employment in the post-transaction Company. As stated in the press release announcing the Proposed Transaction:

> Following the completion of the transaction, Epoch will continue to operate and serve clients under its current brand name and operating structure. Epoch's management and investment team, philosophy and process will remain the same. As part of the transaction, the leadership team of Epoch, both investment and business personnel, have entered into long-term employment agreements reinforcing their commitment to the firm.

66.     According to the employment agreement entered into between TD and Priest, during the five year period following the consummation of the merger, Priest will serve as Executive Vice President of TD Bank Group and Chief Executive Officer of Epoch, and also as a member of the Epoch board of directors and Chairman of Epoch's Operating Committee.  Priest will have an annual base salary of $600,000 and will be eligible to participate in Epoch's Annual Incentive Plan for Epoch's first three fiscal years following the consummation of the merger. The employment agreement also provides that Priest will be entitled to receive a transition award upon the consummation of the merger, which will be an amount equal to 1.5 times the sum of Priest's 2012 salary and 2012 annual incentive.

67.     Additionally, TD has entered into employment agreements with David N. Pearl and Taussig, pursuant to which each will receive an annual base salary of $450,000 and will be entitled to participate in the Annual Incentive Plan during the first three fiscal years following the consummation of the merger. The employment letter agreements also provide that each of the executives will be entitled to receive a transition award upon the consummation of the merger, which will be an amount equal to 1.5 times the sum of the executive's 2012 salary and 2012 annual incentive.

68.     Additionally, all unvested restricted stock held by the Company's officers and directors will automatically vest upon closing of the Proposed Transaction. Below is a chart detailing the amount of consideration each of these officers and directors will receive:

| Name of Executive Officer or Director | Number of Unvested Restricted Shares[1] | Cash Consideration for Unvested Restricted Shares |
|---|---|---|
| William W. Priest | 79,509 | $    2,226,252 |
| Adam Borak | 32,688 | 915,264 |
| David N. Pearl | 80,475 | 2,253,300 |
| Timothy T. Taussig | 83,118 | 2,327,304 |
| Allan R. Tessler | 2,671 | 74,788 |
| Enrique R. Arzac | 3,561 | 99,708 |
| Jeffrey L. Berenson | 2,671 | 74,788 |
| John L. Cecil | 3,561 | 99,708 |
| Peter A. Flaherty | 3,561 | 99,708 |

69.     Thus, while the Proposed Transaction is not in the best interest of Epoch's shareholders, it will produce lucrative benefits for the Company's officers and directors.

### The Materially False and Misleading Proxy

70.     On January 15, 2013 the Company filed the Proxy with the SEC in connection with the Proposed Transaction. The Proxy fails to provide the Company's

shareholders with material information and/or provides them with materially misleading information thereby rendering the shareholders unable to make an informed decision on how to vote their shares at the special shareholder meeting, including, *inter alia*:  (1) key management-prepared financial projections necessary for shareholders to determine whether Epoch is better off continuing as a standalone company; (2) .

### 1.  Epoch's Management-Prepared Financial Projections

71.    The Proxy does not include in the projections prepared by management, any projections for 2017 other than EBITDA.  Such projections are particularly material as Credit Suisse utilized managements projections in its Discounted Cash Flow analysis that the Board relied upon in recommending the Proposed Transaction.

72.    Disclosure of management's financial projections are material and necessary to provide Epoch's shareholders with a full picture of management's inside view into the Company's future profitability and growth.  Only after shareholders are armed with this information can they make an informed voting decision.

### 2.  Credit Suisse's Financial Analyses and Potential Conflicts

73.    The Proxy fails to disclose the dates on which Credit Suisse performed financial services to TD as well as the compensation Credit Suisse received for these services. The Proxy also fails to disclose whether Credit Suisse has performed any financial services for the Company during the last two years, and if so, the compensation received for such services, as well as the dates on which these services were rendered.

74.    The Proxy also fails to disclose which members of management were formally employees of Credit Suisse.

75.     In addition, the Proxy fails to disclose certain material inputs and assumptions used and relied upon by Credit Suisse in its financial analyses, including:

(a)     With respect to the *Selected Companies Analysis*: the multiples observed for each of the selected companies;

(b)     With respect to the *Selected Transactions Analysis*: the multiples observed for each of the selected transactions;

(c)     With respect to the *Discounted Cash Flow Analysis*: the definition of cash flow utilized in the analysis; the relevant figures utilized by Credit Suisse for 2017; the assumptions and inputs used to calculate the discount rate of 13.0% to 15.0% and the terminal 2017E EBITDA multiples of 8.0x to 9.5x.

76.     The opinion of a financial advisor is perhaps the most important information that must be disclosed to shareholders in connection with a merger such as contemplated by the Proposed Transaction.  Indeed, it is fundamental that, in order for shareholders to make an informed decision, shareholders need a fair summary of a financial advisor's analyses.  According for there to be a fair summary of Credit Suisse's analyses, defendants must disclose the above material information.

### 3.   Material Omissions Concerning the Process

77.     The Proxy also fails to disclose certain material elements of the sales process and negotiations with TD.  Indeed, detail concerning the discussions with TD are sparse in the mere four and one half pages of the 145-page Proxy that purport to describe the "Background of the Merger."  Such material omissions include the following:

(a)     How many third parties Epoch met with from time to time for the achievement of the Company's long-term goals, as well as whether representatives of Epoch met with any of these parties since the initiation of discussions with TD, and if so, the content of such discussions;

(b)     All dates on which post-transaction employment of the Company's executive officers was discussed between representatives of TD and management, as well as the content of such discussions;

(c)     Whether the Board authorized Priest and Taussig to meet intermittently with representatives of TD during April and May of 2011;

(d)     Whether any other financial advisors other than Credit Suisse were considered;

(e)     Details regarding the discussions that occurred between Epoch and TD during 2011 through April 2012 when discussions terminated, including what offers and counteroffers on price were made between the parties to provide shareholders with any basis to assess the negotiation process between TD and Epoch;

(f)     The reason for which discussions between the Company and TD resumed during the summer and early fall of 2012, and how the decision to resume these discussions was impacted by issues of key personnel risk discussed by the Board in April and May 2012;

(g)     Whether the Board ever considered creating a Special Committee to oversee managements negotiations with TD, as well as the reason for which such a

21

committee was not formed, particularly given the Board allowed conflicted management and defendants Priest and Taussig to run the process and negotiations with TD;

(h)     The potential range of possible buyers discussed by the Board in early November 2012, as well as the level of interest the Board believed these buyers would have in acquiring the Company;

(i)     The other strategic business relationships discussed by the Board in early November 2012;

78.     The above material omitted disclosures are important to Epoch shareholders' ability to assess the credibility of the process and negotiations with TD, as well as the Board's deliberations regarding the process.

79.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I
### Violations of Section 14(a) of the Exchange Act
### and Rule 14a-9 Promulgated Thereunder

80.     Plaintiff brings this claim individually on behalf of himself.

81.     Plaintiff repeats all previous allegations as if set forth in full herein, except for those set forth in paragraphs 30-37.

82.     Defendants have issued the Proxy with the intention of soliciting shareholder support of the Proposed Transaction.  Each of the Individual Defendants reviewed and/or assisted in the preparation of the materially misleading Proxy and

allowed its contents to be issued to Epoch's public shareholders with the intent of soliciting their vote on the Proposed Transaction.

83.     Rule 14a-9, promulgated by SEC pursuant to Section 14(a) of the Exchange Act provides that a proxy statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

84.     Specifically, the proxy violates the Section 14(a) and Rule 14a-9 because it omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants should have known that the Proxy is materially misleading and omits material facts that are necessary to render them non-misleading.

85.     The misrepresentations and omissions in the Proxy are material to Plaintiff, as well as the Company's other public shareholders, and Plaintiff and other shareholders will be deprived of their entitlement to cast a fully informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

## COUNT II
### Breach of Fiduciary Duties
### (Against All Individual Defendants)

86.     Plaintiff repeats all previous allegations as if set forth in full herein.

87.     The Individual Defendants have knowingly and recklessly and in bad faith violated fiduciary duties of care and loyalty owed to the public shareholders of Epoch and have acted to put their personal interests ahead of the interests of Epoch shareholders.

88.     The Individual Defendants' recommendation of the Proposed Transaction will result in change of control of the Company which imposes heightened fiduciary responsibilities to maximize Epoch's value for the benefit of the stockholders and requires enhanced scrutiny by the Court.

89.     The Individual Defendants have breached their fiduciary duties of loyalty and due care owed to the shareholders of Epoch because, among other reasons:

(a)     they failed to take steps to maximize the value of Epoch to its public shareholders and took steps to avoid competitive bidding;

(b)     they failed to properly value Epoch; and

(c)     they ignored or did not protect against the numerous conflicts of interest resulting from the directors' own interrelationships or connection with the Proposed Transaction.

90.     As a result of the Individual Defendants' breaches of their fiduciary duties, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Epoch's assets and will be prevented from benefiting from a value-maximizing transaction.

91.     Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the Class, and may consummate the Proposed Transaction, to the irreparable harm of the Class.

92.     Plaintiff and the Class have no adequate remedy at law.

## COUNT III
### Breach of Fiduciary Duty -- Disclosure
### (Against Individual Defendants)

93.     Plaintiff repeats all previous allegations as if set forth in full herein.

94.     The fiduciary duties of the Individual Defendants in the circumstances of the Proposed Transaction require them to disclose to Plaintiff and the Class all information material to the decisions confronting Epoch's shareholders.

95.      As set forth above, the Individual Defendants have breached their fiduciary duty through materially inadequate disclosures and material disclosure omissions.

96.     As a result, Plaintiff and the Class members are being harmed irreparably.

97.     Plaintiff and the Class have no adequate remedy at law.

## COUNT IV
### Aiding and Abetting
### (Against TD, and Merger Sub)

98.     Plaintiff repeats all previous allegations as if set forth in full herein.

99.     As alleged in more detail above, Defendants TD, and Merger Sub have aided and abetted the Individual Defendants' breaches of fiduciary duties.

100.    As a result, Plaintiff and the Class members are being harmed.

101.    Plaintiff and the Class have no adequate remedy at law.

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A)    declaring Plaintiff's state law claims be certified as class action claims and certifying Plaintiff as the Class representatives and his counsel as Class counsel;

(B)    declaring that the Proxy is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange and Rule 14a-9 promulgated thereunder;

(C)    enjoining, preliminarily and permanently, the Proposed Transaction;

(D)    in the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

(E)    directing that Defendants account to Plaintiff and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties;

(F)    awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(G)    granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

Dated: January 24, 2013

Respectfully submitted,

By: _____
Joseph E. Levi, Esq.
Shannon L. Hopkins, Esq.
LEVI & KORSINSKY, LLP
30 Broad Street, 24th Floor
New York, New York 10004

Tel: (212) 363-7500
Fax: (212) 363-7171

*Attorneys for Plaintiff*